# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TONYA EVETTE RHODES,
            Appellant,

       v.

DEPARTMENT OF VETERANS
   AFFAIRS,
            Agency.

DOCKET NUMBER
AT-0752-12-0316-X-1

DATE: April 13, 2015

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Valorie Reilly</u>, Saint Petersburg, Florida, for the appellant.

<u>W. Cheryl Griffith</u>, Esquire, St. Petersburg, Florida, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## ORDER

¶1      The administrative judge issued a compliance initial decision finding the agency noncompliant with the March 15, 2013 initial decision in the underlying removal appeal. MSPB Docket No. SF-0752-12-0316-C-1, Compliance File (CF), Tab 11, Compliance Initial Decision (CID). For the reasons discussed below, we

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

now find the agency in partial compliance and order it to take appropriate action to bring itself into full compliance.

### DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶2      On March 15, 2013, the administrative judge issued an initial decision reversing the appellant's removal and requiring the agency to restore her effective February 15, 2012. MSPB Docket No. AT-0752-12-0316-I-1, Initial Appeal File, Tab 47, Initial Decision (ID) at 16. The decision required the agency to pay her appropriate back pay and benefits. ID at 16. Neither party filed a petition for review, and the initial decision became the final decision of the Board.

¶3      On July 30, 2013, the appellant filed a petition for enforcement. She contended that the agency: failed to pay her the correct amount of back pay, with interest; erroneously generated an overpayment notice relating to her Federal Employee Health Benefit (FEHB) premiums, causing the agency to attempt to collect a nonexistent debt; failed to make the required 1 percent Thrift Savings Plan (TSP) contributions; and failed to withhold money from her back pay for Federal Employee Group Life Insurance (FEGLI) premiums. CF, Tab 1 at 2-4, Tab 10 at 4, 7.

¶4      On December 10, 2013, the administrative judge issued a compliance initial decision finding the agency noncompliant with the March 15, 2013 initial decision. CID. The administrative judge held that the agency failed to adequately explain its back pay calculations, including how it calculated the back pay period and interest amounts. CID at 3. The administrative judge further held that the agency failed to provide evidence to show that it made appropriate transfers to the appellant's TSP account and FEGLI. CID at 3. Finally, the administrative judge found that the agency admitted that it might have erroneously submitted a debt notice to the Office of Personnel Management (OPM) regarding the appellant's FEHB plan and had not provided evidence that it

corrected such error. CID at 3. The administrative judge ordered the agency to take the following actions:

1. Set forth the gross back pay amount and explain how the amount was calculated;

2. Set forth the amount and reason for all deductions;

3. Set forth the source and amount of all payments and proof that they were received;

4. Set forth the amount of interest due on the back pay and how that amount was calculated;

5. Explain any discrepancies between the agency's calculations and the appellant's earnings and leave (E&L) statements;

6. Provide evidence that it transferred money withheld for FEGLI to the appropriate entity;

7. Provide evidence that it made appropriate TSP payments on the appellant's behalf; and

8. Provide evidence that it corrected any erroneous debt notice transmitted to OPM.

CID at 4-5.

¶5    Neither party filed a petition for review. On January 13, 2014, the agency filed evidence of purported compliance, to which the appellant responded on January 31, 2014.[2]  *See* MSPB Docket No. AT-0752-12-0316-X-1, Compliance Referral File (CRF), Tabs 1, 3. For the reasons explained below, we now find the agency in partial compliance.

---

[2] Following these submissions, the case was referred to a Board Office of General Counsel (OGC) attorney for attempted settlement. In February 2015, after the parties failed to reach an agreement, the case was transferred to a different OGC attorney for a recommended disposition on the merits. The parties did not submit any further documents into the record during settlement discussions.

**ANALYSIS**

¶6 When the Board finds a personnel action unwarranted or not sustainable, it orders that the appellant be placed, as nearly as possible, in the situation she would have been in had the wrongful personnel action not occurred. *House v. Department of the Army*, 98 M.S.P.R. 530, ¶ 9 (2005). The agency bears the burden to prove its compliance with a Board order. An agency's assertions of compliance must include a clear explanation of its compliance actions supported by documentary evidence. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011). The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance." *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

Back Pay and Interest

¶7 The administrative judge ordered the agency to clearly set forth the back pay and interest amounts due, including how the amounts were calculated and the amount and reason for all deductions. The agency also was required to provide proof of payment and to explain any discrepancies between its calculations and the amounts shown on the appellant's E&L statements. CID at 4-5.

¶8 The agency submitted evidence attempting to comply with these requirements. Specifically, the agency explained that the back pay period ran from February 15, 2012, (the effective restoration date), through March 30, 2012 (the day before the appellant's disability retirement took effect). CRF, Tab 1 at 5; *see* CF, Tab 3, Exhibit F at 175. The agency explained how it calculated the appellant's back pay—by multiplying her hourly rate by the number of hours she would have worked—and provided evidence that it paid the calculated amounts in several different installments. CRF, Tab 1 at 5-6, 20-27. The agency also explained its interest calculations. *Id.* at 8, 71-73.

¶9 The appellant challenged the agency's calculations in part, contending that the agency failed to explain whether it: (1) accounted for any required

within-grade increase (WIGI) during the back pay period, and (2) included in the back pay the 20 hours per month mandatory overtime she asserts she would have worked during the back pay period. CRF, Tab 3 at 9-10, 13. The agency did not submit a response addressing these issues, and we are unable to determine from its narrative and documents whether it considered them. Accordingly, we find the agency noncompliant concerning these issues. To come into compliance, the agency must submit evidence regarding the appellant's entitlement to a WIGI and to overtime pay. If the agency determines that its previous calculations were incorrect, then it must pay the appellant interest on the amount outstanding.

¶10  Other than these WIGI and overtime pay issues and the FEGLI, TSP, and FEHB withholding issues discussed below, the appellant did not point to any specific problems with the back pay analysis. However, she offered a general challenge to the form of the agency's narrative explanation and evidence. She asserted that the agency's narrative explanation of its calculations was inadequate because it was not in affidavit form. CRF, Tab 3 at 8. We agree that the agency's explanations are inadequate as to the WIGI and overtime issues, as explained above, and as to the three withholding issues, as explained below. We otherwise reject the appellant's challenge because she has not pointed to any specific flaw in the agency's calculations. *See Brown*, 113 M.S.P.R. 325 at ¶ 5. The agency's narrative explanation is clear as to the overall back pay and interest calculations and is supported by documentary evidence. That is sufficient where, as here, the appellant has not identified specific contradictions or oversights but merely speculates that the calculations might not be correct.

FEGLI

¶11  The administrative judge ordered the agency to provide evidence that it transferred money withheld from the appellant's back pay for FEGLI to the appropriate entity. CID at 5. In its January 13, 2014 submission, the agency asserted that OPM's back pay regulations do not permit employee or agency contributions for life insurance coverage to be deposited in the fund unless the

employee "dies during the intervening period or suffered dismemberment entitling [her to] benefits" during the back pay period. CRF, Tab 1 at 9. The appellant challenged this assertion, and the agency did not provide any legal citations for it. CRF, Tab 1 at 76, Tab 3 at 14. However, it appears the agency is referring to 5 C.F.R. § 870.404(e), which covers both basic and optional FEGLI contributions and provides:

> Effective October 21, 1972, when there is an official finding that an employee was suspended or fired erroneously, no withholdings are made from the back pay. Exception: if death or accidental dismemberment occurs during the period between the employee's removal and the finding that the agency action was erroneous, premiums are withheld from the back pay awarded.

¶12      This provision appears to support the agency's contention that it was not permitted to withhold basic or optional FEGLI contributions from the appellant's back pay. However, the E&L statement submitted by the agency for the back pay period appears to contradict its claim that it did not withhold FEGLI contributions. The agency's Breakdown of June 15, 2013 Payment and Deductions—which covered February 16, 2012, to March 30, 2012, *see* CRF, Tab 1 at 5—lists "FEGLI Options A, B, C" as "-48.36," CRF, Tab 1 at 21-22; *see* CRF, Tab 1 at 6-7 (the agency's deduction chart lists FEGLI A, B, C deductions from the June 13, 2013 payment).[3]      Accordingly, we find the agency noncompliant on this issue. To be compliant, the agency must clearly explain whether it withheld optional FEGLI contributions from the appellant's back pay, and how much. If the agency determines that it improperly withheld contributions, the agency must demonstrate that it refunded to the appellant any withheld amounts, plus interest.[4]

---

[3] Both the E&L and the narrative statement appear to show that the agency properly did not withhold basic insurance contributions from the back pay payment. *See* CRF, Tab 1 at 7, 21-22.

[4] The Board does not have jurisdiction over matters pertaining to OPM's decisions respecting FEGLI entitlements. *Richards v. Office of Personnel Management*,

TSP

¶13        The agency acknowledged that it was required to contribute an amount equal to 1 percent of the appellant's salary to her TSP account for each pay period during the back pay period. CRF, Tab 1 at 6. The agency conceded that it did not do so. Instead, after finding that it "could not verify" that the required amounts were received by the TSP, the agency mailed the appellant a check for an amount equal to the 1 percent contribution during the four pay periods at issue ($92.86). *Id.* The appellant challenged both the calculation of the 1 percent contribution and the agency's decision to provide it to her directly rather than submit it to the TSP. CRF, Tab 3 at 8-9. We agree and find the agency noncompliant on both counts.

¶14        The agency did not explain how it calculated the 1 percent contribution. Moreover, any such calculation would be suspect in light of our finding that the agency may have failed to account for a WIGI and mandatory overtime during the back pay period. Accordingly, the agency must recalculate the 1 percent contributions after it determines whether the appellant was entitled to a WIGI and to mandatory overtime and must submit a narrative explanation of its calculations.[5]

¶15        The agency also erred in paying the 1 percent contribution directly to the appellant rather than depositing it into her TSP fund. Absent the appellant's consent, direct payment is inadequate to establish compliance because it does not

97 M.S.P.R. 291, ¶ 6 (2004). However, the issue in this compliance case is not the appellant's entitlement to FEGLI but whether the agency was required to withhold contributions from her back pay and submit them to the appropriate entity. Because this is an issue of compliance with a Board final order, we may address it. *See Lua v. Office of Personnel Management*, 102 M.S.P.R. 108, ¶ 8 (2006).

[5] It is not clear whether the appellant asserts that she is entitled to more than a 1 percent contribution. In any event, we find that she is not, based on the documentary evidence in the compliance file showing that upon restoration she elected to use the contribution election on file at the time of her removal, which was limited to the 1 percent agency contribution. CF, Tab 3 at 110-13.

provide her the tax benefits she would have received and the interest she would have accrued had the funds been deposited into her TSP account. *See Tubesing v. Department of Health and Human Services*, [115 M.S.P.R. 327](link), ¶¶ 17-20 (2010) (discussing the agency obligation to meet regulatory requirements regarding TSP contributions). To come into compliance, therefore, the agency must provide proof that it made the appropriate contributions to the appellant's TSP account.

Erroneous Debt Notice to OPM

¶16    The appellant asserted that the agency erroneously charged her with a debt and sent a debt notice to OPM, which began trying to collect the debt from her. CF, Tab 1 at 2. The administrative judge ordered the agency to provide an explanation and to submit evidence that it corrected any erroneous debt notice transmitted to OPM. CID at 5.

¶17    In its January 13, 2014 submission, the agency explained that it erroneously paid the appellant for the 187.5 hours of annual leave she had accrued at the time of her removal. The payment was erroneous because the agency had already paid her for this leave when it removed her. CRF, Tab 1 at 5. The second payment resulted in a debt of $6,800.63 (gross). *See id*. at 9. The agency maintained that this debt was valid. *Id*.

¶18    The agency further explained that it had erroneously charged the appellant for FEHB premiums during the back pay period and for several months afterward, creating an apparent debt of $5,160.48 gross ($198.48 per pay period x 26 pay periods). *See id*. at 9, 65; *see also* CF, Tab 8 at 7. The agency conceded this debt should not have been assessed and provided evidence that it notified OPM to cancel its attempts to collect the debt. CRF, Tab 1 at 67-69.

¶19    Finally, the agency stated that, during its review of the back pay issues, it discovered that it had inadvertently failed to deduct employee and agency retirement contributions from the payment issued to the appellant on June 15, 2013 (which covered the hours worked during the back pay period, although as noted above, this may have erroneously excluded any WIGI and overtime due

her). CRF, Tab 1 at 5, 9. The agency stated that it was attempting to correct this error and that the appellant would receive a notice of indebtedness for her retirement contributions. *Id.* at 9. The agency did not submit any evidence showing that this issue has been resolved.

¶20 The appellant contended that the agency's explanations were incomprehensible and sought to have any debt waived. CRF, Tab 3 at 11-12. We disagree. The agency clearly explained that the appellant owes two debts: one arising from an erroneous overpayment related to her annual leave, the other from the agency's inadvertent failure to withhold employee retirement contributions from her back pay payment. However, the appellant asserts, without contradiction, that her collective bargaining agreement required the agency to provide her notice and an opportunity to request that the debt be waived but that the agency failed to provide either. CRF, Tab 3 at 13. The agency must address this issue in its next compliance submission.

¶21 The agency also clearly explained the origin of the debt notice the appellant received from OPM as arising from erroneous deductions for FEHB premiums. However, we agree with the appellant that the agency has not provided sufficient evidence that it corrected this issue. Specifically, the agency must show that, in addition to canceling the FEHB debt, it refunded to the appellant any amounts it deducted, with interest. The agency provided evidence that it refunded FEHB amounts withheld from her back pay, CRF, Tab 1 at 6, 38, but did not address whether it paid interest on this amount or whether it was required to make any refund for the period between April 1, 2012, and May 5, 2013, *see* CF, Tab 8 at 7 (explaining that the debt accrued over 26 pay periods, beginning with the back pay period (February 15, 2012, to March 30, 2012) and extending until the appellant was "transferred" onto OPM's rolls as a disability retirement annuitant on May 5, 2013).

Sanctions

¶22    The appellant seeks sanctions against the responsible agency official pursuant to 5 U.S.C. §§ 1204(a)(2) and (e)(a)(2) and 5 C.F.R. § 1201.183(c). Because the agency has submitted evidence of partial compliance, it would be inappropriate to impose sanctions. *See Tubesing*, 115 M.S.P.R. 327 at ¶ 21; *Eikenberry v. Department of the Interior*, 39 M.S.P.R. 119, 121 (1988). Likewise, we reject the appellant's request for an independent auditor paid for by the agency. CRF, Tab 3 at 16. At this time, the remaining compliance issues do not appear complex enough to warrant such an appointment.

## FURTHER ACTIONS NEEDED FOR COMPLIANCE

¶23    Within **21 days** of the date of this Order, the agency shall submit the following:

1. A narrative explanation, supported by documents and/or affidavits as appropriate, regarding the appellant's entitlement to a WIGI and overtime pay during the back pay period. If the agency determines that the appellant is entitled to either, it must submit evidence of payment, including interest. Any interest payment must likewise be accompanied by a narrative explanation and documentation regarding how it was calculated.

2. A narrative explanation, supported by documents and/or affidavits as appropriate, explaining whether it withheld optional FEGLI contributions from the appellant's back pay, and how much. If the agency determines that it improperly withheld contributions, then it must provide evidence that it refunded to the appellant any withheld amounts, plus interest. Any interest payment must be accompanied by a narrative explanation and documentation regarding how it was calculated.

3. A narrative explanation of how it calculated the appellant's 1 percent TSP contributions, which also must account for any amounts owed her for a WIGI and overtime during the back pay period. The explanation must be supported by documentary evidence or affidavits. The agency also must provide evidence that it deposited the appropriate amounts into the appellant's TSP fund.

4. Evidence that the agency provided the appellant any applicable notice and opportunity to request waiver of the debts arising from the annual leave and employee retirement contribution overpayments.

5. Evidence, accompanied by a narrative explanation, showing that the agency refunded to the appellant any amounts deducted, with interest, for the FEHB debt. The agency should address whether it: (1) paid interest on the FEHB amounts refunded for pay periods between February 15, 2012, and March 30, 2012; and (2) refunded and paid interest on any amounts withheld between April 1, 2012, and May 5, 2013.

6. The agency must inform the Board whether the responsible agency official is still Michelle Campbell, Director of HRC Jackson, Mississippi. If not, the agency is directed to submit the name and title of the new responsible agency official.

If the agency fails to submit this information, then the Board may issue an order to show cause why sanctions should not be imposed against the responsible agency official pursuant to 5 U.S.C. § 1204(e)(2)(A) and 5 C.F.R. § 1201.83(a)(2).

¶24        The appellant shall file a response within **14 days** of the agency's submission of compliance. Failure to submit a response within the required time

period may cause the Board to assume she is satisfied and dismiss the petition for enforcement.


FOR THE BOARD:                     _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.